IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN KARL EDWARD BRADFORD       *

Plaintiff                              *

v                                  *       Civil Action No. WDQ-13-2506

JASON CLEM, *et al*.               *

Defendants               *
                             ***

MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 13) which is opposed by Plaintiff (ECF Nos. 18, 20-21). Also pending are Plaintiff's Motions for Appointment of Counsel (ECF No. 19), to Compel Discovery (ECF No. 23), and to Stay (ECF No. 18).[1] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Defendants will be granted summary judgment, and the Plaintiff's motions will be denied.

Plaintiff Steven Karl Edward Bradford is a prisoner confined at Patuxent Institution. Defendants Dr. Jason Clem and Physician's Assistant Carol Oltman are medical care providers at Eastern Correctional Institution ("ECI") where Bradford was incarcerated at all times relevant to the Complaint.

Bradford states that on November 2, 2004, he sustained fractures to the floor of his left eye socket with severe damage to the left intraorbital nerve.[2] The damage to Bradford's eye resulted in the development of severe chronic pain in the left side of his face, migraines, and

---

[1] Bradford also moves "in opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (ECF No. 20). As this filing was incorrectly docketed as a motion, rather than an opposition, it will be denied.

[2] The injuries to Bradford's eye were sustained in a fight with another inmate.

double vision upon upward gaze.  He states that if he does not receive adequate medication to treat his chronic pain and migraine, he is unable to engage in normal daily activities.  Bradford states that a specialist at the Wilmer Eye Institute, Dr. Michael Grant, told him that the injuries to his eye are more than likely permanent.  ECF No. 1 at 3-4.

On August 19, 2010, Bradford was seen by Dr. Cornell Shelton, a specialist at Bon Secours Hospital in Baltimore, Maryland who increased the dosage of Bradford's prescription for Tramadol and added a Depakote prescription to address Bradford's nerve pain and migraines. On November 18, 2010, Bradford went to see Dr. Shelton for follow-up.  Bradford informed Dr. Shelton that the medications provided in August gave him some relief, but he was still experiencing significant pain.  Shelton then prescribed Lyrica to address Bradford's nerve pain. Bradford states that for two years he remained on a regimen of Tramadol,[3] Depakote,[4] and Lyrica[5] with adequate pain relief, which enabled him to engage in normal daily activities.  *Id.* at 4-5.

Bradford states that he was regularly seen in a chronic care clinic at ECI which is reserved for inmates with serious medical issues such as chronic pain, asthma, hypertension, or cancer. Before ECI's change in contracted health care providers on July 1, 2012, Bradford states that it was the practice for the chronic care doctor to evaluate Bradford and re-order this pain medication regimen.  When the change in health care providers occurred, the doctor who was

---

[3]   Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain.  *See* http://www.drugs.com/tramadol.html.

[4]   Depakote is an anti-seizure medication that is used to treat seizures, treat manic episodes in bipolar disorder, and prevent migraine headaches.  *See* http://www.drugs.com/depakote.html.

[5]   Lyrica is an anti-epileptic drug that slows impulses in the brain that cause seizures and affects chemicals in the brain that send pain signals across the nervous system. *See* http://www.drugs.com/lyrica.html.

treating Bradford no longer worked in the chronic care clinic and, as a result, Bradford was not seen in the usual 90-day period for evaluation and prescription renewal. *Id.* at 5-6.

On August 1, 2012, Bradford submitted a request to medical staff for renewal of his pain medications, because the prescriptions were due to expire and he had not been seen in the chronic care clinic. Six days later, Bradford was seen in the medical department by Oltman who listened to his heart and respiration, but asked no questions regarding his level of pain. Although Bradford claims Oltman told him that all of his prescriptions had been renewed, Bradford later discovered that only the Lyrica prescription was renewed. Bradford alleges that at the time this occurred the three medications he was taking--Depakote, Lyrica, and Tramadol--were adequately addressing his chronic pain. Despite Bradford's well-documented pain issues, however, Oltman allegedly failed to renew his prescriptions for Depakote and Tramadol, and did not provide Bradford with substitute medications. *Id.* at 7-8.

On August 18, 2012, Bradford took his last doses of Depakote and Tramadol. He states that after these two medications were no longer available to him, his pain increased significantly. On August 21, 2012, Bradford contacted medical staff to inform them of the significant increase in his pain and request medication to alleviate it. Bradford claims that his sick call request was ignored. On August 22, 2012, Bradford states that he wrote a letter to the medical director, Dr. Jason Clem, informing him that he was experiencing significant pain due to the failure to renew his prescriptions for Depakote and Tramadol. Bradford alleges that this letter was also ignored. *Id.* at 8-9.

Bradford states that he continued to contact Clem to request his assistance in letters dated September 3 and 4, 2012. Also, on September 4, 2012, Bradford sent "an emergency grievance" to the Warden's office requesting that she intervene on his behalf. On the following day,

3

Bradford started receiving Depakote, and on September 6, 2012, he began receiving Tramadol. He states that he was forced to go without Depakote and Tramadol for two weeks, which caused him to suffer pain needlessly. *Id.* at 9-10.

In response to Bradford's grievance filed with the Warden, on September 13, 2012, he was called to the medical unit to discuss the matter with the charge nurse, Jen Austin. Bradford claims that Austin apologized to him for the delay in renewing his medication and claimed that Oltman did not do so when Bradford was seen because she lacked the necessary license. Austin asked Bradford to withdraw his grievance in light of the fact that he was currently receiving all of his medication, but Bradford declined, stating that he wanted an official response regarding the matter and intended to pursue it in court. Bradford claims that Austin became belligerent and accused him of not really wanting the medication, only a legal cause of action. Bradford further alleges that Austin claimed there was "a lot of paperwork" involved in getting Bradford's prescriptions renewed. *Id.* at 10 – 11.

Defendants admit that when Oltman saw Bradford on August 7, 2012 in response to his sick call request, Oltman only submitted a renewal request for Bradford's Lyrica prescription-- and did not request renewal of his Tramadol and Depakote prescriptions--because she does not have a license to prescribe narcotic class medications. ECF No. 13, Ex. 2 at 94. Oltman did, however, make a request for Bradford to be seen by another provider. *Id*. Ex. 3.

Bradford was seen again on September 4, 2012 by Judith Hearthway, Nurse Practitioner, for renewal of his Tramadol and Depakote prescriptions. *Id*. Ex. 2 at 18. On that date, Bradford was provided with prescription renewals for both medications which began September 4, 2012 and continued through January 4, 2013. *Id*. Defendants allege that between August 17, 2012-- the date Bradford's prescriptions expired--and September 4, 2012, there is no record of Bradford

4

attempting to contact medical staff to inform them that he was experiencing a significant increase in pain, nor did Bradford tell Hearthway about an increase in pain when he was seen on September 4, 2012. *Id.* at 18-94. Defendants further allege that the brief interruption in Bradford's medication was not the result of any intentional conduct on their part. *Id.* Exs. 1-3.

Plaintiff's motions

Bradford moves for appointment of counsel, stating that he is unable to afford counsel and that his incarceration will limit his ability to effectively litigate this matter. ECF No. 19. Federal district court judges have discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1) when an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by Bradford, the Court finds that he has demonstrated the ability to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No hearing is necessary to the disposition of this case, and there are no exceptional circumstances to warrant the appointment of counsel under §1915(e)(1). The Motion for Appointment of Counsel will be denied.

Bradford also filed Motions to Stay Defendants' Motion to Dismiss or for Summary Judgment and to Compel Discovery. ECF Nos. 18, 23. He requests a stay, because he has served interrogatories on counsel to which they had thirty days to respond. ECF No. 18. In his Motion to Compel, Bradford seeks to compel Defendants to answer the interrogatories, because the reason they gave for not providing a response was inadequate. ECF No. 23.

Local Rule 803.1 (D. Md. 2011) provides that "discovery shall not commence until the issuance of a Scheduling Order." Also, under Federal Rule of Civil Procedure 26(d)(1), "a party may not seek discovery from any source before the parties have conferred as required by Rule

5

26(f)."  Here, there has been no scheduling order issued setting forth deadlines for discovery,

and the parties have not held a discovery conference.  Accordingly, there is no basis to stay

consideration of the Motion to Dismiss or for Summary Judgment, nor to compel Defendants to

respond to propounded interrogatories.

Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of *some* alleged
> factual dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be no
> *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (*quoting* Fed. R. Civ. P. 56(e)).

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw

all inferences in [his] favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must,

however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

6

quotation marks omitted) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue

of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th

Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state an Eighth Amendment

claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants,

or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires

proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that,

subjectively, the prison staff was aware of the need for medical attention but failed to either

provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837

(1994). Objectively, the medical condition must be serious. *See Hudson v. McMillian,* 503 U.S.

1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to

health care). Proof of an objectively serious medical condition, however, does not end the

inquiry.

The subjective component requires "subjective recklessness" in the face of the serious

medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that

risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness

on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference

7

'because prison officials who lacked knowledge of a risk cannot be said to have inflicted

punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995)

(*quoting Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an

official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not

ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be

judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.

3d 383, 390 (4th Cir. 2000) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (court

must focus on precautions actually taken in light of suicide risk, not those that could have been

taken)).

In opposition to Defendants' Motion for Summary Judgment, Bradford states that there is

nothing in the record to suggest that Oltman referred Bradford to another provider for renewal of

his prescriptions. Also, Bradford states that he was not physically seen by Hearthway on

September 4, 2012; rather, his chart was administratively reviewed per the request of a nurse.

ECF No. 20 at 4 (*citing* Defendants' Ex. 2 at 18-20). Bradford states that--given his absence

during Hearthway's chart review--it was impossible for him to voice any complaints regarding

his increase in pain due to the lapse in his prescriptions. *Id.*

Bradford also refutes Defendants' assertion that he did not contact medical staff during

the two week lapse in receiving his medication. He states he filed a sick call slip on August 21,

2012. *Id.* at 4-5; *see also* ECF No. 1 at 18. Also, Bradford states that he sent a letter to

Defendant Clem on August 22, 2012 informing him that he was suffering from migraines and an

increase in pain. In that letter, Bradford requested that Clem put him back on the medications

prescribed by the pain management specialist. ECF Nos. 1 at 19, Ex. C; 20 at 5. Bradford states

that he also sent another letter to Clem on September 3, 2012, again requesting to be put back on

the medications previously prescribed or to be given a substitute medication to alleviate his increased pain. ECF Nos. 1 at 20, Ex. D; 20 at 5. Further, Bradford disagrees that the delay was "brief," as characterized by the Defendants. ECF No. 20 at 6.

Defendants' Reply[6] reiterates that the interruption of his medication did not result in an exacerbation of his underlying condition and therefore does not constitute deliberate indifference to a serious medical need. ECF No. 24. They again rely on Oltman's affidavit to establish that a referral was made and state that Bradford was seen the day after Bradford claims he wrote Clem a letter.[7] Defendants assert that Bradford's pain during the time that he did not receive two of his pain medications is not a significant injury for purposes of a constitutional claim.

Bradford's contentions about the lack of documentation of Oltman's referral and that he was not physically examined by Hearthway are well taken. Additionally, it is possible that Bradford's requests for prescription renewals were not documented. The fact that Bradford was seen by Clem one day after he states he wrote to him complaining about the lapse in medication strongly indicates that Bradford did voice his concerns during the period when he did not receive Tramadol and Depakote. Bradford has also offered enough evidence regarding the level of pain he suffered to establish that he objectively had a serious medical need.[8] There is no evidence, however, that Bradford was intentionally deprived of these medications. If the defendants' purpose was to inflict suffering on Bradford, Oltman would not have provided him with a

---

[6] Defendants improperly assert that Plaintiff's Opposition Response was untimely filed. ECF No. 24. Bradford sought and was granted an enlargement of time in which to file his Opposition. ECF Nos. 15-16.

[7] Defendants contend that Bradford did not contact medical staff regarding the lapse in his medications.

[8] It is undisputed that Bradford suffers from a chronic pain condition, that the medication at issue is prescribed to treat that condition, and that--without the medication--he suffers severe pain.

9

prescription for Lyrica, and Bradford's letter to Clem would not have prompted Hearthway to renew the prescriptions for Depakote and Tramadol. As Bradford alleges in his Complaint, the lapse in his prescriptions occurred at the same time as a change in the contractor for health care services. While the error in this case seems easily avoided, there is no evidence of the subjective recklessness required to establish an Eighth Amendment claim. Thus, Defendants are entitled to summary judgment.

A separate Order follows.

5/22/14
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

10